IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TROY COOPER,
        Plaintiff,

    v.

PHARMACIST S. NAKU, NURSE KAUR, and DR. YUEN CHEN,

        Defendants.

2:10-cv-01057-GEB-DAD

ORDER

        Plaintiff Troy Cooper ("Plaintiff"), a state prisoner proceeding pro se, brings this civil rights action under 42 U.S.C. § 1983, alleging Defendants acted with deliberate indifference to his serious medical needs in violation of the Eighth and Fourteenth Amendments to the United States Constitution. Defendants Kaur and Chen move for summary judgment on each of Plaintiff's claims, arguing Plaintiff's Fourteenth Amendment due process claim is duplicative of his Eighth Amendment claim, Defendants did not act with deliberate indifference to Plaintiff's serious medical needs, Plaintiff cannot establish that Defendants' actions or omissions caused Plaintiff harm, and alternatively, that Defendants are entitled to qualified immunity. (Defs.' Mot. for Summ. J. 8:13-14, 9:20-21, 10:1, 11:27-12:5, ECF No. 36.)

        The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. On February 1, 2012, the Magistrate Judge filed findings and recommendations, which

1

were served on all parties, and which contained notice to all parties that any objections to the findings and recommendations were to be filed within fourteen days. (ECF No. 63.) Defendants filed objections to the findings and recommendations. (ECF No. 68.)

In accordance with 28 U.S.C. § 636(b)(1) and Local Rule 304, this Court has conducted a de novo review of this case. Having carefully reviewed the entire file, the court finds the findings and recommendations to be supported by the record and by proper analysis except on the issue whether Defendant Kaur acted with deliberate indifference concerning Plaintiff's serious medical needs.

## I. LEGAL STANDARD

A party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "A fact is 'material' when, under the governing substantive law, it could affect the outcome of the case." Thrifty Oil Co. v. Bank of Am. Nat. Trust & Sav. Ass'n, 322 F.3d 1039, 1046 (9th Cir. 2003)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). An issue of material fact is "genuine" when "'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Id. (quoting Anderson, 477 U.S. at 248).

When the defendant is the moving party and is seeking summary judgment on one or more of a plaintiff's claims, the defendant

> has both the initial burden of production and the ultimate burden of persuasion on [the motion]. In order to carry its burden of production, the [defendant] must either produce evidence negating an essential element of the [plaintiff's claim] or show that the [plaintiff] does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. In order to carry its ultimate burden of persuasion on the

motion, the [defendant] must persuade the court that there is no genuine issue of material fact.

Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1102 (9th Cir. 2000)(citations omitted). If the moving party satisfies its initial burden, "the non-moving party must set forth, by affidavit or as otherwise provided in [Federal] Rule [of Civil Procedure ('Rule')] 56, '*specific facts* showing that there is a genuine issue for trial.'" T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987)(quoting Fed. R. Civ. P. 56(e)). The "non-moving plaintiff cannot 'rest upon the mere allegations or denials of the adverse party's pleading' but must instead produce evidence that 'set[s] forth specific facts showing that there is a genuine issue for trial.'" Estate of Tucker ex rel. Tucker v. Interscope Records, Inc., 515 F.3d 1019, 1030 (9th Cir. 2008)(quoting Fed. R. Civ. P. 56(e)).

Evidence must be viewed "in the light most favorable to the non-moving party," and "all reasonable inferences" that can be drawn from the evidence must be drawn "in favor of [the non-moving] party." Nunez v. Duncan, 591 F.3d 1217, 1222-23 (9th Cir. 2010)(internal quotation marks omitted). However, "[t]he district court must . . . undertake some initial scrutiny of the inferences that could be reasonably drawn from the evidence" to determine "whether there remains sufficient probative evidence which would permit a finding in favor of the [non-moving party] based on more than mere speculation, conjecture, or fantasy." Barnes v. Arden Mayfair, Inc., 759 F.2d 676, 680-81 (9th Cir. 1985).

## II. UNCONTROVERTED FACTS[1]

At all relevant times, Plaintiff was incarcerated at California State Prison-Solano ("SOL"). (Defs.' Statement of Undisputed Facts ("SUF") ¶ 1.) In essence, this action concerns Plaintiff's allegations that certain SOL medical staff acted with deliberate indifference concerning his serious medical need; specifically, his peripheral vascular disease ("PVD"). (Pl.'s First Am. Compl. ¶¶ 6-131.) Plaintiff's allegations concern medical treatment he received at SOL preceding the January 7, 2009, below-the-knee amputation of his right leg. Id.

Plaintiff was diagnosed with PVD in 2005. (SUF ¶ 2.) PVD is a progressive narrowing or blocking of the arteries which results in restricted blood flow to the leg. Id. ¶ 3. PVD can cause coldness, bluish discoloration, pain when walking, which is called "claudication," or gangrene in the extremities. Id. Between August 2005 and April 2008, Plaintiff underwent three surgical procedures on his right leg to treat his PVD. Id. ¶ 4. In April of 2008, he was prescribed Coumadin, a blood thinner, to treat his PVD. Id. ¶ 5.

At all relevant times, Defendant Kaur ("Kaur") was employed by SOL as a nurse. (Decl. of K. Kaur ("Kaur Decl.") ¶ 1.) She has been licensed in California as a registered nurse since 2004. Id. As a registered nurse, Kaur provides primary medical care to inmates. Id. ¶ 2. She triages patients' complaints, conducts physical examinations, refers inmates to doctors, and schedules appointments. Id.

---

[1] The uncontroverted facts discussed herein concern only the issue of whether Defendant Kaur acted with deliberate indifference concerning Plaintiff's serious medical needs since all other portions of the findings and recommendations are adopted in full.

4

Plaintiff's claims against Kaur involve his interactions with her on October 6, 2008, and October 22, 2008, concerning Plaintiff's complaint of right leg pain. (Pl.'s Dep. 28:3-29:7, 36:8-11, 39:4-8; Kaur Decl. ¶ 3.)[2]  The parties dispute the extent of their interactions on these dates.

On November 5, 2008, Plaintiff had a follow up appointment with his vascular surgeon, who noted that the prior surgeries to correct or improve Plaintiff's circulation to his right leg failed. (SUF ¶ 25.) Therefore, Plaintiff underwent another right-leg surgery that same day. Id. Plaintiff underwent a fifth right-leg surgery on December 31, 2008, and had his right leg amputated below the knee on January 7, 2009, after attempts to restore circulation to his foot failed. Id. ¶¶ 32-33. Plaintiff contends Kaur's actions and/or omissions were a direct cause of his right leg amputation. (Pl.'s First Am. Compl. ¶ 125.)

### III. DISCUSSION

Kaur seeks summary judgment on Plaintiff's Eighth Amendment deliberate indifference to serious medical needs claim, arguing, *inter alia*, "[n]othing in [her] conduct or treatment of [Plaintiff] demonstrates that she was indifferent to his medical needs." (Defs.' Mot. for Summ. J. 8:17-19.) Specifically, Kaur argues: "[i]n October 2008, [she] . . . treated and triaged [Plaintiff's] ailments, referred him to a doctor as needed, scheduled follow-up appointments, placed orders for prescriptions, and checked on the status of his prescriptions. Nothing in Kaur's conduct or treatment of [Plaintiff]

---

[2] Although Kaur states in her declaration, and Plaintiff's medical records reflect, that Kaur interacted with Plaintiff on two additional dates, October 8, 2008, and October 10, 2008, these events are not discussed herein since they are not a basis for Plaintiff's claims against Kaur. (Kaur Decl. ¶¶ 7-10, Ex. B at 3-4.)

demonstrates that she was indifferent to his medical needs." Id. at 8:14-18 (citation omitted). Plaintiff counters that Kaur's "motion for summary judgment [should be] denied." (Pl.'s Opp'n 2:10-12.)

"An inmate's complaint of inadequate medical care amounts to a constitutional violation if the inmate alleges 'acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.'" Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990)(quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

> In the Ninth Circuit, the test for deliberate indifference consists of two parts[:] First, the plaintiff must show a "serious medical need" by demonstrating that "failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." Second, the plaintiff must show the defendant's response to the need was deliberately indifferent.

Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)(quoting McGukin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997)(en banc))(internal quotation marks and citations omitted). "For purposes of this motion," Kaur does not dispute that Plaintiff had a serious medical need. (Defs.' Mot. for Summ. J. 8 n.1.) Therefore, resolution of her summary judgment motion on Plaintiff's Eighth Amendment claim depends solely upon whether a genuine issue of material fact exists that she acted with deliberate indifference to his serious medical need.

Deliberate indifference is "satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). "[Deliberate i]ndifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison

physicians provide medical care.'" Jett, 439 F.3d at 1096 (quoting McGuckin, 974 F.2d at 1059).

"[A]n 'inadvertent or negligent failure to provide adequate medical care alone does not state [a Constitutional violation].'" Id. (internal brackets omitted)(quoting McGuckin, 974 F.2d at 1059). "While poor medical treatment will at a certain point rise to the level of constitutional violation, mere malpractice, or even gross negligence, does not suffice." Wood, 900 F.2d at 1334. Further, "a mere difference of medical opinion is insufficient, as a matter of law, to establish deliberate indifference.'" Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004)(internal brackets omitted)(quoting Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996)). "Rather, to prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to the prisoner's health.'" Id. (internal brackets omitted)(quoting Jackson, 90 F.3d at 332).

Concerning the parties' October 6, 2008, interaction, Kaur declares that she "treated [Plaintiff]" when "[h]e submitted a request for medical treatment for pain in his right-lower leg that he claimed began earlier that day." (Kaur Decl. ¶ 2.) Kaur further declares:

> During [her] examination, [she] took [Plaintiff's] blood pressure, respiration, pulse, temperature, and checked his orientation and pain level. [She] examined his legs and ability to walk. He had no swelling, discoloration, or acute distress, and his left and right calves were the same size. [She] checked for Homans' signs—a test to check for possible blood clots by flexing the ankle while the knee is bent at a ninety-degree angle—which were negative. [She] found that [Plaintiff's] pedal pulse was weaker in his right foot than his left.

7

> Based on [her] findings, [Kaur] scheduled [Plaintiff] for an immediate appointment with a doctor. [Defendant] Chen saw him that afternoon.
>
> After [Plaintiff's] appointment with the doctor, [Kaur] scheduled him for his next appointment, instructed him to take his Coumadin . . . as prescribed, and to return to the clinic if he developed any swelling or redness or if his leg pain continued. [Kaur] also called the prison pharmacy to ensure that [Plaintiff's] Coumadin prescription was delivered to him.

(Kaur Decl. ¶¶ 4-6.)

Plaintiff testified during his deposition that Kaur examined him on October 6, 2008, and that he was subsequently seen by Dr. Chen on the same day. (Pl.'s Dep. 28:3-23, 32:10-21.) However, he disputes the extent to which Kaur examined his right foot. Plaintiff testified in relevant part as follows:

> Q. When you arrived at the medical clinic, did Nurse Kaur see you right away?
>
> A. Yes.
>
> Q. Okay. And to the best of your recollection, what is it that you told her was your primary complaint?
>
> A. Well, I told her I walk a certain distance and I would have to stop.
>
> Q. Did you specify what that distance was?
>
> A. Yes, I did.
>
> Q. What did you tell her?
>
> A. About 150 yards.
>
> Q. Okay.
>
> A. She then asked me to take off my boot and sock, and that's when she felt my Achilles tendon. She said at that time you have tendinitis, and she called another nurse to verify her diagnosis saying that that nurse had experience with that type of condition.
>
> . . . .

8

1   Q. When Nurse Kaur was examining your foot, did you feel she had any kind of animosity or ill will against you?

2

3   A. She didn't examine my foot. She examined my tendon --

4

5   Q. Okay.

   A. -- my Achilles tendon.

6

7   No, I didn't feel that she had any animosity.

8   Q. Okay.

9   A. But she didn't in my presence consult my medical record.

10

11   Q. Did you ask her if she had reviewed your medical records before your arrival?

12   A. No, I didn't.

13   Q. Did she tell you that she had not reviewed your medical file before your arrival?

14

15   A. No, she didn't.

16   Q. Now, you mentioned that she asked you to take off your shoe and your sock; is that correct?

17   A. Yes.

18   Q. Okay. Did she or did you roll up your pants, if you were wearing pants?

19

20   A. I didn't have to roll them up. It was already pulled up.

21   Q. Okay. And what part was it from, just below the knee, mid calf, that your leg was exposed to view?

22

23   A. It was my whole -- well, from my knee to my foot.

24

25   Q. Okay. Did Nurse Kaur put her hand on your feet? Did she touch you on your foot, your calf, your knee or anywhere on that lower part of your leg?

26

27   A. She touched me on the Achilles tendon.

28   Q. Okay. So she put her hands on you?

1   A. Yes.

2   Q. Okay. And how long was she actually touching you?

3

4   A. No more than six, seven seconds.

5   Q. Okay. And while she was touching you, did she say anything to you?

6   A. After she finished touching me she said something.

7

8   Q. Okay. What did she say after she was done touching your leg?

9   A. She said you have tendinitis.

10  Q. Did she say anything else?

11  A. Not that I can recall, no.

12  . . . .

13  Q. And you mentioned that after she examined you she went and got another nurse?

14

15  A. No, the nurse was present at that time in the same room.

16  Q. Okay. So while she was touching your leg there was another nurse present?

17

18  A. Yes.

19  . . . .

20  Q. Did that other nurse say anything in response to any of the comments you had made about the symptoms you were having?

21

22  A. No, she didn't. She simply, I think, felt my Achilles tendon and said yes, it's tendinitis.

23  Q. So both nurses, Nurse Kaur and this other nurse, touched your leg during the process of them treating you?

24

25  A. Yes.

26  Q. After the second nurse concurred with Nurse Kaur, what happened after that?

27

28  A. Well, after that I was seen by Dr. Chen.

. . . .

10

| | |
|---|---|
| 1 | Q. Okay. But you saw Dr. Chen the same day? |
| 2 | A. Yes. |

       Q. Okay. Would you say you waited more or less than an hour?

       A. I would say less.

       . . . .

       Q. Okay. At any time when Nurse Kaur was seeing you on October 6th, did she refuse to address any of the concerns you had?

       A. She just didn't make any comment on them.

       Q. Okay. At any time did she tell you that she was not going to treat you for your complaints?

       A. No.

       . . . .

       Q. Did you tell Nurse Kaur that you had PVD?

       A. Well, I -- no, I didn't express that on that day, no.

       . . . .

       Q. Okay. Did you tell Nurse Kaur that you had suffered from blood clots before October 6, 2008?

       A. I simply stated on the appeal -- I mean health care form that I had suspected a blood clot.

       Q. During any time she saw you and was looking at your leg, did you mention blood clots at all to her?

       A. No.

Id. at 28:21-34:6.

       Regarding the parties' October 22, 2008, interaction, Kaur declares that she "did not treat or triage [Plaintiff] on this day[,]" but she "placed an order for an arch support and scheduled [him] for the blood work that Dr. Chen prescribed." (Kaur Decl. ¶ 11.)

11

1 Plaintiff testified in his deposition that his medical records
2 do reference an order for a "gel insole" on October 22, 2008. (Pl.'s
3 Dep. 35:9-36:7.) However, Plaintiff testified that Kaur personally
4 examined him on that date as well. Plaintiff testified concerning his
5 October 22, 2008, interaction with Kaur as follows:

> [Q.] You mentioned that [Kaur] also saw you on October 22, 2008; is that correct?
>
> A. Yes.
>
> Q. Do you remember if that was a ducated appointment or if it was a walk-in?
>
> A. It was a scheduled appointment.
>
> Q. Did you fill out another health request form for that appointment?
>
> A. No, I didn't.
>
> Q. Okay. Was that like a follow-up appointment?
>
> A. I believe so, yes.
>
> . . . .
>
> [D]o you have an independent recollection of seeing [Kaur] on October 22nd?
>
> A. Yes, I remember seeing her on October 22nd.
>
> . . . .
>
> Q. Okay. When you saw Nurse Kaur on October 22nd, what were your complaints at that time?
>
> A. I believe I told her I was still having the same type of pain that I had previously.
>
> Q. Did you tell her what distance you were able to walk before the pain became intolerable?
>
> A. No, I don't believe I mentioned that.
>
> Q. Do you recall if you mentioned your PVD on October 22nd?
>
> A. No.

12

1    Q. Did you mention your PVD on October 22nd?

2    A. I don't think I did.

3    Q. Did you mention to Nurse Kaur that you had previously suffered from blood clots on October 22nd?

4

5    A. Not on that date, no.

6    Q. Okay. Did she put her hands on you to examine you on October 22nd?

7

8    A. No.

9    Q. What was the extent of your interaction with her on October 22nd?

10   A. I believe she took my blood pressure. I'm not sure.

11

12   Q. Were you there to see her specifically or were you there to see another -- a doctor?

13   A. Well, the process here is you see the nurse first and then you see a doctor.

14

15   Q. Okay. So your interaction with her was more in just doing the initial blood pressure, temperature, maybe pulse before you saw the doctor?

16

17   A. Yes.

18   Q. Okay. It wasn't a specific appointment with her?

19   A. No.

20   Q. Okay. On October 22nd, did she make any kind of diagnosis as far as your condition?

21

22   A. I believe she said again that I had tendinitis.

23   Q. Did she look at your leg --

24   A. No.

25   Q. -- before she said that?

26   A. No.

27   Q. Okay. At any time when she was processing you and taking your vital signs, did you feel that she had any animosity or ill feelings towards you?

28

13

1        A.   No, I didn't.

2           . . . .

3        Q.   Any any time during your interaction with Nurse Kaur on October 22nd, did she tell you that she was not going to treat you?

4

5        A.   No, she didn't.

6        Q.   Did she tell you she was not going to allow you to see the physician?

7

8        A.   No, she didn't.

9        Q.   Did she refuse you entry into the medical clinic?

10       A.   No, she didn't.

11       Q.   Were you able to get in to see Dr. Chen on the 22nd of October?

12

13       A.   Yes.

14 (Pl.'s Dep. 34:9-38:17.)

15      Although the parties dispute the scope of their interactions
16 on October 8, 2008, and October 22, 2008, it is undisputed that Kaur
17 never refused Plaintiff treatment. Further, it is undisputed that Kaur
18 did not delay Plaintiff in obtaining further medical care; Plaintiff was
19 seen by a doctor, Defendant Chen, on both of the dates at issue. Even
20 accepting all of Plaintiff's deposition testimony as true, and drawing
21 all reasonable inferences therefrom in his favor, "[t]here is nothing in
22 [Kaur's] actions to suggest that she knew that [Plaintiff] faced a
23 substantial risk of serious harm and disregarded that risk by failing to
24 take reasonable steps to abate it." Newman v. McLean, No. C 05-01724 JW
25 (PR), 2009 WL 688859, at *3 (N.D. Cal. Mar. 13, 2009)(stating
26 allegations that "[Defendant Nurse] saw plaintiff within a day or two of
27 his initial injury, promptly ordered an x-ray upon a follow-up
28 examination after plaintiff complained of continual pain, and referred

14

plaintiff to a physician for further treatment . . . [a]t most . . . may give rise to a claim of medical malpractice or negligence which are insufficient to make out a violation of the Eighth Amendment"). "Even if [Kaur] misdiagnosed his condition, and even if that misdiagnosis amounted to negligence, that is insufficient to establish deliberate indifference." Schilling v. Ferriter, No. CV 11-28-H-DWM-RKS, 2012 WL 78423, at *3 (D. Mont. Jan. 10, 2012)(dismissing Eighth Amendment deliberate indifference to serious medical needs claim against nurses who allegedly misdiagnosed an inmate's dislocated shoulder as a muscle cramp).

Accordingly, IT IS HEREBY ORDERED that:

1. The findings and recommendations filed February 1, 2012, are adopted in full except on the issue that a genuine material factual issue exists concerning whether Kaur acted with deliberate indifference concerning Plaintiff's serious medical needs;

2. Defendants' May 5, 2011 motion for summary judgment (ECF No. 36) is granted in part and denied in part as follows:

    A.  Each Defendant's motion for summary judgment on Plaintiff's Fourteenth Amendment due process claim is granted;

    B.  Defendant Chen's motion for summary judgment on Plaintiff's Eighth Amendment claim is denied;

    C.  Defendant Kaur's motion for summary judgment on Plaintiff's Eight Amendment claim is granted.

Dated:  March 16, 2012

_____
GARLAND E. BURRELL, JR.
United States District Judge