1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10    TROY COOPER,

11           Plaintiff,                    No. CIV S-10-1057 GEB DAD P

12        vs.

13    KAUR et al.,

14           Defendants.              FINDINGS AND RECOMMENDATIONS

15    _____/

16           Plaintiff is a state prisoner proceeding pro se with a civil rights action seeking

17    relief under 42 U.S.C. § 1983.  This matter is before the court on a motion for summary

18    judgment brought on behalf of defendant Naku pursuant to Rule 56 of the Federal Rules of Civil

19    Procedure.  Plaintiff has filed an opposition to the motion, and defendant Naku has filed a reply.

20                                      **BACKGROUND**

21           Plaintiff is proceeding on an amended complaint against defendants Pharmacist

22    Naku and Dr. Chen.[1]  In relevant part, plaintiff alleges in his complaint as follows.  Plaintiff

23    suffers from peripheral vascular disease and has undergone multiple surgical procedures in

24    _____

25           [1]  Defense counsel previously filed a motion for summary judgment on behalf of
      defendant Dr. Chen, which this court denied on March 16, 2012.  The pending motion is brought
26    solely on behalf of defendant Naku.

1   connection with that condition at Queen of the Valley Hospital ("QVH").  In March 2008, after

2   his second surgery, plaintiff was discharged from QVH with a prescription for Coumadin, a

3   blood thinner.  According to plaintiff, notwithstanding his prescription, he spent the next eight

4   days incarcerated at CSP-Solano without access to Coumadin.  In plaintiff's view, defendant

5   Pharmacist Naku was at fault for not ensuring that he received his prescribed medication.  On

6   April 10, 2008, plaintiff began to experience right lower extremity pain and coldness in his right

7   leg and ultimately had to return to QVH to undergo a third surgery.  (Am. Compl. at 4-7.)

8           In October 2008, plaintiff complained to medical personnel that he was suffering

9   from pain in his lower right leg once more.  On November 5, 2008, one Dr. Loftus examined

10  plaintiff and determined he had developed a blood clot and needed to undergo a fourth surgery.

11  After his fourth surgery, plaintiff returned to CSP-Solano and experienced no difficulties for the

12  next month or so.  However, on or about December 8, 2008, he began to experience pain his

13  lower right leg again and believes that it was because he ran out of Coumadin on December 4,

14  2008.  According to plaintiff, defendant Pharmacist Naku failed to refill his prescription at that

15  time.  On December 29, 2008, plaintiff saw a Dr. Rohrer who examined plaintiff's foot and

16  found that it was cold.  Plaintiff had to return to QVH once more where he was required to

17  undergo an amputation of his leg below the right knee.  (Am. Compl. at 9-12.)

18          Based on these allegations, plaintiff claims that defendant Pharmacist Naku has

19  been deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.

20  In terms of relief, plaintiff requests damages.  (Am. Compl. at 13 & 15.)

21          **SUMMARY JUDGMENT STANDARDS UNDER RULE 56**

22          Summary judgment is appropriate when it is demonstrated that there exists "no

23  genuine issue as to any material fact and that the moving party is entitled to a judgment as a

24  matter of law."  Fed. R. Civ. P. 56(c).

25          Under summary judgment practice, the moving party
            always bears the initial responsibility of informing the district court
26          of the basis for its motion, and identifying those portions of "the

                                            2

1             pleadings, depositions, answers to interrogatories, and admissions
           on file, together with the affidavits, if any," which it believes
2             demonstrate the absence of a genuine issue of material fact.

3  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

4  nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

5  judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

6  to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered,

7  after adequate time for discovery and upon motion, against a party who fails to make a showing

8  sufficient to establish the existence of an element essential to that party's case, and on which that

9  party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof

10 concerning an essential element of the nonmoving party's case necessarily renders all other facts

11 immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as

12 whatever is before the district court demonstrates that the standard for entry of summary

13 judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

14         If the moving party meets its initial responsibility, the burden then shifts to the

15 opposing party to establish that a genuine issue as to any material fact actually does exist.  See

16 Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

17 establish the existence of this factual dispute, the opposing party may not rely upon the

18 allegations or denials of its pleadings but is required to tender evidence of specific facts in the

19 form of affidavits, and/or admissible discovery material, in support of its contention that the

20 dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

21 must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

22 of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

23 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

24 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

25 return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

26 1436 (9th Cir. 1987).

1    In the endeavor to establish the existence of a factual dispute, the opposing party

2 need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

3 claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

4 versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

5 judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

6 genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

7 committee's note on 1963 amendments).

8    In resolving the summary judgment motion, the court examines the pleadings,

9 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

10 any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

11 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

12 court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

13 Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

14 produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

15 Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

16 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

17 show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

18 as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

19 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

20                      **OTHER APPLICABLE LEGAL STANDARDS**

21 I.  Civil Rights Act Pursuant to 42 U.S.C. § 1983

22    The Civil Rights Act under which this action was filed provides as follows:

23        Every person who, under color of [state law] . . . subjects, or causes
          to be subjected, any citizen of the United States . . . to the
24        deprivation of any rights, privileges, or immunities secured by the
          Constitution . . . shall be liable to the party injured in an action at
25        law, suit in equity, or other proper proceeding for redress.

26 42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

4

1   actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See

2   Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362

3   (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the

4   meaning of  § 1983, if he does an affirmative act, participates in another's affirmative acts or

5   omits to perform an act which he is legally required to do that causes the deprivation of which

6   complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

7           Moreover, supervisory personnel are generally not liable under § 1983 for the

8   actions of their employees under a theory of respondeat superior and, therefore, when a named

9   defendant holds a supervisorial position, the causal link between him and the claimed

10  constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862

11  (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory

12  allegations concerning the involvement of official personnel in civil rights violations are not

13  sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

14  II.  The Eighth Amendment and Inadequate Medical Care

15          The unnecessary and wanton infliction of pain constitutes cruel and unusual

16  punishment prohibited by the Eighth Amendment.  Whitley v. Albers, 475 U.S. 312, 319 (1986);

17  Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976).

18  In order to prevail on a claim of cruel and unusual punishment, a prisoner must allege and prove

19  that objectively he suffered a sufficiently serious deprivation and that subjectively prison officials

20  acted with deliberate indifference in allowing or causing the deprivation to occur.  Wilson v.

21  Seiter, 501 U.S. 294, 298-99 (1991).

22          Where a prisoner's Eighth Amendment claims arise in the context of medical

23  care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence

24  deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106.  An Eighth

25  Amendment medical claim has two elements:  "the seriousness of the prisoner's medical need

26  and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050,

1059 (9th Cir. 1991), <u>overruled</u> on <u>other</u> <u>grounds</u> <u>by</u> <u>WMX Techs., Inc. v. Miller</u>, 104 F.3d 1133 (9th Cir. 1997) (en banc).

A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" <u>McGuckin</u>, 974 F.2d at 1059 (quoting <u>Estelle</u>, 429 U.S. at 104). Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities." <u>Id.</u> at 1059-60. By establishing the existence of a serious medical need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation. <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994).

If a prisoner establishes the existence of a serious medical need, he must then show that prison officials responded to the serious medical need with deliberate indifference. <u>Farmer</u>, 511 U.S. at 834. In general, deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with medical treatment, or may be shown by the way in which prison officials provide medical care. <u>Hutchinson v. United States</u>, 838 F.2d 390, 393-94 (9th Cir. 1988). Before it can be said that a prisoner's civil rights have been abridged with regard to medical care, however, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." <u>Broughton v. Cutter Laboratories</u>, 622 F.2d 458, 460 (9th Cir. 1980) (citing <u>Estelle</u>, 429 U.S. at 105-06). <u>See</u> <u>also</u> <u>Toguchi v. Soon Hwang Chung</u>, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights."); <u>McGuckin</u>, 974 F.2d at 1059 (same). Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" <u>Farmer</u>, 511 U.S. at 835 (quoting <u>Whitley</u>, 475 U.S. at 319).

Delays in providing medical care may manifest deliberate indifference. <u>Estelle</u>, 429 U.S. at 104-05. To establish a claim of deliberate indifference arising from delay in

providing care, a plaintiff must show that the delay was harmful.  See Berry v. Bunnell, 39 F.3d

1056, 1057 (9th Cir. 1994); McGuckin, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332,

1335 (9th Cir. 1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989); Shapley v.

Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).  In this regard, "[a]

prisoner need not show his harm was substantial; however, such would provide additional

support for the inmate's claim that the defendant was deliberately indifferent to his needs."  Jett

v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).  See also McGuckin, 974 F.2d at 1060.

       Finally, mere differences of opinion between a prisoner and prison medical staff

or between medical professionals as to the proper course of treatment for a medical condition do

not give rise to a § 1983 claim.  Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330,

332 (9th Cir. 1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Franklin v. Oregon, 662

F.2d 1337, 1344 (9th Cir. 1981).

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

I. Defendant's Statement of Undisputed Facts and Evidence

       Defendant's statement of undisputed facts is supported by citations to declarations

signed under penalty of perjury by defendants Pharmacist Naku and Dr. Chen and citations to

plaintiff's medical records.  It is also supported by references to excerpts from plaintiff's

deposition testimony as well as plaintiff's responses to defendant's discovery requests.

       The evidence submitted by defendant Naku establishes the following.  In 2005,

plaintiff was diagnosed as suffering from peripheral vascular disease ("PVD").  PVD is a

progressive narrowing or blocking of the arteries which results in restricted blood flow to the leg

or limb.  PVD can cause coldness, bluish discoloration, pain when walking (called

"claudication"), or gangrene in the extremities.  (Def.'s SUDF 1-2, Pl's Dep., Esquivel Decl. Ex.

C, Chen Decl.)

       On April 2, 2008, plaintiff received a prescription for Coumadin, a blood thinner,

to treat his PVD.  The medical or nursing staff where an inmate is housed is responsible for

1    forwarding any order or prescription to the pharmacy at CSP-Solano.  Otherwise, the pharmacy

2    has no way of knowing that the inmate needs medication.  Defendant Pharmacist Naku did not

3    issue the order prescribing plaintiff Coumadin and did not know that plaintiff had a prescription

4    for Coumadin.  Nor did she know that he did not receive any prescribed medication.  (Def.'s

5    SUDF 3-5, Esquivel Decl. Ex. G, Naku Decl.)

6           As a pharmacy supervisor, defendant Pharmacist Naku did not personally fill or

7    receive the prescriptions sent to the pharmacy and did not personally supervise or oversee the

8    filling of every prescription received at the pharmacy.  Defendant Pharmacist Naku did not

9    supervise or oversee the administration, distribution, or dispensing of medication to inmates.

10   Rather, nursing staff was responsible for dispensing and administering medication to inmates.

11   (Def.'s SUDF 6-7, Naku Decl.)

12          According to plaintiff's responses to defendant's discovery requests, plaintiff has

13   no evidence that defendant Pharmacist Naku was aware of plaintiff's prescription for Coumadin

14   or that plaintiff was not receiving his prescribed medication.  Plaintiff also has no evidence that

15   defendant Pharmacist Naku acted with deliberate indifference to his serious medical needs.

16   (Def.'s SUDF 8-9, Esquivel Decl. Exs. E & F.)

17   II.  Defendant's Arguments

18          Defense counsel argues that defendant Pharmacist Naku is entitled to summary

19   judgment in her favor with respect to plaintiff's Eighth Amendment claims because there is no

20   evidence before the court indicating that the defendant was deliberately indifferent to plaintiff's

21   medical needs.  Specifically, defense counsel argues defendant Pharmacist Naku did not know

22   that plaintiff had a prescription for Coumadin or that he was not receiving his prescribed

23   medication.  Moreover, counsel argues that plaintiff himself admits as much in his responses to

24   defendant's discovery requests.  Finally, counsel argues that defendant Naku cannot be held

25   liable as a supervisor because there is no evidence that she deprived plaintiff of his prescribed

26   medication, knew that he was not receiving his medication and failed to intervene, or

1  implemented a policy or procedure that caused the deprivation of his medication.  (Def.'s Mem.

2  of P. & A. at 3-6.)

3  III.  Plaintiff's Opposition

4         In opposition to defendant's motion for summary judgment, plaintiff has filed a

5  "motion to deny defendants motion for summary judgment, or in the alternative, motion to

6  dismiss."  Therein, plaintiff refers the court to his filing from February 24, 2012, which includes

7  a declaration from plaintiff as well as a memorandum of points and authorities and attached

8  exhibits.  The court previously construed plaintiff's February 24, 2012 filing as a motion

9  pursuant to Rule 56(d)(1) of the Federal Rules of Civil Procedure, denied the motion, and

10  granted plaintiff additional time to file a further opposition to defendant Naku's motion for

11  summary judgment.  However, in light of plaintiff's most recent request that the court treat his

12  February 24, 2012 filing as his opposition, the court will proceed to address the pending motion

13  for summary judgment without further delay.

14         In his opposition, plaintiff declares that on April 10, 2008, he went to the medical

15  annex after he had not received his Coumadin for eight days.  Plaintiff also submits to the court

16  copies of his health care services request forms, which he believes reflect a pattern of medication

17  not being delivered to him in a timely manner, as well as a copy of the California Department of

18  Corrections and Rehabilitation policy governing pharmacy responsibilities, scope of service, and

19  supervision.  (Pl.'s Decl. at 5 & Exs. H & I.)

20  IV.  Defendant's Reply

21         In reply, defense counsel reiterates that the undisputed evidence shows that

22  defendant Pharmacist Naku neither knew of plaintiff's prescription for Coumadin now was aware

23  that plaintiff was not receiving his prescribed medication.  Defense counsel contends that

24  plaintiff has not submitted any evidence to show that his prescription was sent to the pharmacy,

25  that defendant Pharmacist Naku received it, or that defendant Naku refused or failed to fill it.

26  (Def.'s Reply at 3.)

**ANALYSIS**

I.  Plaintiff's Serious Medical Needs

The parties do not dispute, and the undersigned concludes, that based upon the evidence presented by the parties in connection with the pending motion a reasonable juror could (and in fact would) conclude that plaintiff's PVD constitutes an objective, serious medical need. See McGuckin, 974 F.2d at 1059-60 ("The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment."); Canell v. Bradshaw, 840 F. Supp. 1382, 1393 (D. Or. 1993) (the Eighth Amendment duty to provide medical care applies "to medical conditions that may result in pain and suffering which serve no legitimate penological purpose.").

Specifically, plaintiff's largely undisputed medical history and the observations and treatment recommendations by plaintiff's doctors, including defendant Dr. Chen as well as other prison doctors and the doctors at QVH, compel the conclusion that plaintiff's medical condition, if left untreated, could result in "further significant injury" and the "unnecessary and wanton infliction of pain." McGuckin, 974 F.2d at 1059.  Accordingly, resolution of the motion for summary judgment brought on behalf of defendant Naku hinges on whether, based upon the evidence before the court, a rationale jury could conclude that the defendant responded to plaintiff's serious medical needs with deliberate indifference.  See Farmer, 511 U.S. at 834; Estelle, 429 U.S. at 106.

II.  Defendant's Response to Plaintiff's Serious Medical Needs

The court finds that defendant Pharmacist Naku has borne the initial responsibility of demonstrating that there is no genuine issue of material fact with respect to the adequacy of the medical care provided to plaintiff.  Specifically, defendant Pharmacist Naku's evidence demonstrates that on April 2, 2008, plaintiff received a prescription for Coumadin, a

blood thinner, to treat his PVD.  However, defendant Pharmacist Naku did not issue the order prescribing Coumadin for plaintiff and did not know that plaintiff had a prescription for Coumadin.  Nor did she know that plaintiff did not receive his prescribed medication.  The medical or nursing staff where an inmate is housed is responsible for forwarding any order or prescription to the pharmacy at CSP-Solano.  Otherwise, the pharmacy has no way of knowing that the inmate needs medication.  (Esquivel Decl. Ex. G, Naku Decl.)

As a pharmacy supervisor, defendant Pharmacist Naku did not personally fill or receive the prescriptions sent to the pharmacy and did not personally supervise or oversee the filling of every prescription received at the pharmacy.  Defendant Pharmacist Naku did not supervise or oversee the administration, distribution, or dispensing of medication to inmates. Nursing staff was responsible for dispensing and administering medication to inmates.  (Esquivel Decl. Ex. C, Naku Decl.)

Given the evidence submitted by defendant Pharmacist Naku in support of the pending motion for summary judgment, the burden shifts to plaintiff to establish the existence of a genuine issue of material fact with respect to his inadequate medical care claims.  On defendant's motion for summary judgment, the court is required to believe plaintiff's evidence and draw all reasonable inferences from the facts before the court in plaintiff's favor.  The court has reviewed plaintiff's verified complaint, his opposition to defendant's motion, and his deposition testimony.  Drawing all reasonable inferences in plaintiff's favor, the court concludes that plaintiff has not submitted sufficient evidence in this action to create a genuine issue of material fact with respect to his claim that defendant Pharmacist Naku violated his rights under the Eighth Amendment.

Specifically, the evidence presented by plaintiff fails to demonstrate that defendant Pharmacist Naku responded to plaintiff's serious medical needs with deliberate indifference or acted in conscious disregard of an excessive risk to plaintiff's health.  See Farmer, 511 U.S. at 834 & 837;  Estelle, 429 U.S. at 106; Gibson v. County of Washoe, 290 F.3d 1175

1    (9th Cir. 2002) ("In order to know of the excessive risk, it is not enough that the person merely

2    'be aware of facts from which their inference could be drawn that a substantial risk of serious

3    harm exists, [] he must also draw that inference.'") (quoting <u>Farmer</u>, 511 U.S. at 842).  Here,

4    there is no evidence that defendant Pharmacist Naku knew that plaintiff had a prescription for

5    Coumadin or knew that plaintiff was not receiving his medication.  In fact, in his responses to

6    defendant's discovery requests plaintiff admits that he has no such evidence.  (Def.'s Esquivel

7    Decl. Exs. E & F.)

8            Nor is there evidence before the court that as a pharmacy supervisor, defendant

9    Pharmacist Naku personally filled or received prescriptions sent to the pharmacy or that she

10   personally supervised or oversaw the filling of plaintiff's prescriptions for Coumadin.  The Ninth

11   Circuit has recently reaffirmed that a supervisory defendant may be held liable under § 1983 only

12   "'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2)

13   a sufficient causal connection between the supervisor's wrongful conduct and the constitutional

14   violation.'"  <u>Starr v. Baca</u>, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting <u>Hansen v. Black</u>, 885

15   F.2d 642, 646 (9th Cir. 1989)).  Here, plaintiff has not come forward with any evidence in

16   opposition to the pending motion for summary judgment indicating that defendant Pharmacist

17   Naku was personally involved in his medical care.  Plaintiff has also failed to demonstrate a

18   sufficient causal connection between the defendant Naku's conduct, if any, and any alleged

19   constitutional violation.

20           Finally, it is well established that before it can be said that a prisoner's civil rights

21   have been abridged, "the indifference to his medical needs must be substantial.  Mere

22   'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action."

23   <u>Broughton v. Cutter Lab.</u>, 622 F.2d 458, 460 (9th Cir. 1980) (citing <u>Estelle</u>, 429 U.S. at 105-06).

24   Here, at most, defendant Pharmacist Naku's conduct or failure to act constitutes neglect or

25   medical malpractice.  Indeed, any purported failure on her part can at most be characterized as

26   isolated occurrences or isolated exceptions, which the Ninth Circuit has determined "militates

1  against a finding of deliberate indifference." <u>McGuckin</u>, 974 F.2d at 1060.  <u>See also Wood</u>, 900

2  F.2d at 1334 ("In determining deliberate indifference, we scrutinize the particular facts and look

3  for substantial indifference in the individual case, indicating more than mere negligence or

4  isolated occurrences of neglect.").  Certainly, plaintiff has not submitted any evidence to the

5  contrary in opposition to the pending summary judgment motion.

6         Accordingly, the court concludes that defendant Pharmacist Naku is entitled to

7  summary judgment in her favor with respect to plaintiff's Eighth Amendment claims against

8  her.[2]

9                              **CONCLUSION**

10        In accordance with the above, IT IS HEREBY RECOMMENDED that:

11        1.  Defendant's motion for summary judgment (Doc. No. 64) be granted;

12        2.  Defendant Naku be dismissed from this action; and

13        3.  This matter be referred back to the undersigned for further proceedings with

14  respect to plaintiff's claims against defendant Dr. Chen.

15        These findings and recommendations are submitted to the United States District

16  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

17  one days after being served with these findings and recommendations, any party may file written

18  objections with the court and serve a copy on all parties.  Such a document should be captioned

19  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

20  shall be served and filed within seven days after service of the objections.  The parties are

21  /////

22  /////

23

24  [2]  Defense counsel also argues that defendant Pharmacist Naku is entitled to summary judgment based on qualified immunity and that, alternatively, this action should be dismissed because plaintiff failed to exhaust his administrative remedies prior to filing suit with respect to

25  his claim against defendant Naku.  In light of the recommendation that defendant Naku's motion for summary judgment be granted on the merits of plaintiff's Eighth Amendment claims, the

26  court declines to address these alternative arguments.

1    advised that failure to file objections within the specified time may waive the right to appeal the

2    District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

3    DATED: June 1, 2012.

4

5                                                    _____

6    DAD:9                                           DALE A. DROZD
     coop1057.57(2)                                  UNITED STATES MAGISTRATE JUDGE
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26